# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MICHAEL HARWELL,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 3:16-cv-277 |
| - vs - | | | District Judge Walter Herbert Rice |
| | | | Magistrate Judge Michael R. Merz |

TOM SCHWEITZER, Warden,
 Lebanon Correctional Institution,

                                                      :

                         Respondent.

# REPORT AND RECOMMENDATIONS

This is habeas corpus action pursuant to 28 U.S.C. § 2254. Petitioner seeks release from confinement imposed as part of the judgment of the Montgomery County Court of Commons Pleas upon Mr. Harwell's convictions for murder, kidnapping, felonious assault, and having weapons under disability.

**Procedural History**

Petitioner Michael Harwell was indicted by the Montgomery County Grand Jury on two counts of murder in violation of Ohio Revised Code § 2903.02(B), two counts of attempt to commit murder in violation of Ohio Revised Code § 2903.02(B)/2923.02(A), two counts of kidnapping in violation of Ohio Revised Code § 2905.01(A)(3), two counts of kidnapping in violation of Ohio Revised Code § 2905.01(B)(2), two counts of kidnapping in violation of Ohio Revised Code § 2905.01(A)(2), three counts of felonious assault in violation of Ohio Revised

Code § 2903.11(A), all with attached firearm specifications, and one count of having weapons while under disability in violation of Ohio Revised Code § 2923.13(A)(3) (State Court Record. ECF No. 5, PageID 74). The jury found Harwell guilty on Counts 1 to 13 with the firearm specifications and the trial judge found him guilty of having weapons under disability. After merger of allied offenses under Ohio Revised Code § 2941.25, Harwell was sentenced to a total of thirty-two years to life in prison.

Mr. Harwell appealed to the Second District Court of Appeals. He waived counsel on appeal and filed two briefs, raising thirteen assignments of error. The appellate court held attempted felony murder is not a crime in Ohio and vacated that conviction, but otherwise affirmed. *State v. Harwell*, 2015-Ohio-2966, 2015 Ohio App. LEXIS 2870 (2nd Dist. July 24, 2015); appellate jurisdiction declined, 143 Ohio St. 3d 1545 (2015).

Mr. Harwell filed his Petition for Writ of Habeas Corpus on June 17, 2016, pleading the following grounds for relief:

> **Ground One:** An indictment is sufficient if it (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense.
>
> **Supporting Facts:** In this case, the indictment omitted essential elements to agg. murder as to cts. 1-2, and attempted murder in cts. 3-4 of the indictment. Trial counsel's performance was deficient under the first prong in Strickland, for failing to file a motion to dismiss cts. 1-4, of the indictment which omitted essential elements thereby failing to apprise the nature of the charges. Counsel was prejudiced by trial counsel's deficient performance when the appellant was convicted and sentenced to a period of life in prison for under an indictment which was insufficient to charge and [sic] offense, that was omitted essential elements.
>
> **Ground Two:** The trial court violated the petitioner's rights to Due Process under the 14th Amend. and to a grand jury indictment

2

under the 5th and 6th Amend, when it instructed the petit jury on elements not charged in the indictment (1-4).

**Supporting Facts:** The material and essential facts constituting an offense are found by the presentment of the grand jury; and if one of the vital and material elements identifying and characterizing the crime has been omitted from the indictment such defective indictment is insufficient to charge an offense, and cannot be cured by the court, as such a procedure would not only violate the constitutional rights of the accused, but would allow the court to convict him on an indictment essentially different from that found by the grand jury.

**Ground Three:** The jury verdict of guilty for cts. 1-13 is contrary to law, as the jury verdict and the jury's verdict forms failed to include all of the essential elements and failed to charge an offense thereby violated Mr. Harwell's right to due process under the 14th Amend.to the U.S. Constitution.

**Supporting Facts:** In this case, the court submitted verdict forms, containing a statutory description of the offenses, however, the verdict forms result in prejudicial and reversible error because the description omits essential element of those offense. The jury did not find Mr. Harwell guilty of every essential element to each crime, and merely citing or reciting the name of the heading of the revised code section of the offense in the verdict form does not suffice to a finding of guilt on every element of the crime.

**Ground Four:** Mr. Harwell's conviction [Cts.1-14] are based on insufficient evidence and were obtained in violation of the Due Process Clause under the 14th Amend. to the United States Const.

**Supporting Facts:** As the Supreme Court explained, a conviction rests upon insufficient evidence when, even after viewing the evidence in light most favorable to the prosecution no rational factfinder could have found the defendant guilty beyond a reasonable doubt. A conviction based on legally insufficient evidence violated due process.

The sate [sic] failed to prove all of the elements to every offense in which Mr. Harwell is convicted. The elements in this case is attempted to proven by simply showing that Mr. Harwell was merely present at the time of the crimes occurred. However, it is well established that a defendant's mere presence at the scene of a crime even when coupled with knowledge that at that moment a

crime is being committed is insufficient to establish the defendant's participation in criminal activity.

**Ground Five:** The trial court violated Mr. Harwell's rights to the 5th, 6th, and 14th Amend. to the U.S. Const. when it increased the felony level of the kidnappings cts. to felonies of the first degree when the defendant was only indicted for kidnappings in the second degree.

**Supporting Facts:** Mr. Harwell argues he was denied the effective assistance of counsel because counsel failed to inform the trial court that kidnapping cts. charged a second degree felonies, and not a first degree felonies. To prevail on an ineffective assistance of counsel claim, a defendant must show counsel's deficient performance and resulting prejudice. As discussed below, the grand jury indicted Harwell on all second degree kidnappings. Trial counsel should have objected to the trial court's jury instruction, sentence, and entry of conviction on first-degree felony offenses because the court in effect impermissible amended the indictment in contravention of, 5th, 6th and 14th Amend. to the U.S. Const. As a result, Harwell was convicted of a higher-degree offenses and subject to greater penalties. an indictment is constructively amended when its charging terms are altered, literally or in effect, by the prosecutor or the court. A constructive amendment may occur through a jury instruction modifying the indictment's charged offense or through the admission of evidence supporting an uncharged offense. The right to be informed of the charges against her and the 5th Amend, right to be tried only on offenses charged by the grand jury.

**Ground Six:** Trial counsel is ineffective in violation of the 6th Amend. to the U.S. Const. when he failed to object to the alternate juror being present while the jury was deliberating.

**Supporting Facts:** Trial counsel is ineffective in violation of the 6th Amend. to the U.S. Const. when he failed to object to the alternate juror being present while the jury was deliberating.

**Ground Seven:** Trial counsel is ineffective in violation of the 6th Amend., to the U.S. Const. when he failed to object to the flawed jury instructions on complicity and causation.

**Supporting Facts:** In this case, the trial judge's instruction for cause and complicity was fatally flawed. First, the complicity instruction failed to instruct the jury that Mr. Harwell had to have the same mens rea as his so-called accomplice. The judge failed to

inform and instruct the jury of this fact, which substantially affected Mr. Harwell's U.S. Const. rights to due process under the 14th Amend. The jury was left to believe that Mr. Harwell could be convicted of all these crimes even if he did not have to [sic] same mens rea as the perpetrator of these crimes. Consequently, because the judge gave improper jury instructions on cause and complicity as to [Cts. 1-13].

**Ground Eight:** Mr. Harwell right to appellate counsel was violated under the 6th Amend. to the U.S. Const. when Mr. Harwell did not knowingly, voluntarily, and intelligently waive his right to appellate counsel.

**Supporting Facts:** The 6th Amend. guarantees a criminal defendant the right to counsel on his first appeal as a right. Waiver of appellate counsel must be …. Knowing, intelligent, and voluntary. A waiver qualifies as knowing and intelligent where the defendant possesses a full awareness of both the nature of the right abandoned and the consequences of the decision to abandon it.

To effectuate a valid waiver of the right to appellate counsel, a court must inform the defendant of the right he is surrendering, alert him to the dangers and disadvantages of self-representation, and ensure that he foregoes counsel with eyes open. Here, Mr. Harwell did not knowingly, intelligently, and voluntarily waive his right to appellate counsel.

(Petition, ECF No. 2, PageID 46-53.)

# Analysis

### Ground One:  Deficient Indictment and Ineffective Assistance of Trial Counsel in Not Objecting

In his First Ground for Relief, Mr. Harwell claims he was tried and convicted on an insufficient indictment and his trial attorney provided ineffective assistance when he failed to move to dismiss Counts 1 through 4 for omitting essential elements of the crimes involved.

As to Counts 3 and 4, Respondent argues Ground One is moot because the Second District vacated Harwell's convictions on those two grounds (Return, ECF No. 6, PageID 2266). Respondent is correct because a federal habeas court will not examine a conviction on which a petitioner is not in custody. *Carafas v. LaVallee*, 391 U.S. 234 (1968). Only Counts One and Two will be discussed.

Counts One and Two of the Indictment read as follows:

> [First Count] THE GRAND JURORS of the County of Montgomery, in the name, and by the authority of the State of Ohio, upon their oaths do find and present that: MICHAEL D. HARWELL, between the dates of JUNE 15, 2012 THROUGH JUNE 16, 2012 in the County of Montgomery, aforesaid, and State of Ohio, did cause the death of another, to wit:  JASON MILLER, as a proximate result of the offender's committing or attempting to commit an offense of violence, to-wit: FELONIOUS ASSAULT, in violation of 2903.11, a felony of the Second Degree, and that said offense is not a violation of either Section 2903.03 or 2903.04 of the Revised Code; contrary to the form of the statute (in violation of Section 2903.02(8) of the Ohio Revised Code) in such case made and provided, and against the peace and dignity of the State of Ohio.
>
> SECOND COUNT:
>
> AND the grand jurors of this County, in the name and by the authority of the State of Ohio, upon their oaths, do find and present that: MICHAEL D. HARWELL between the dates of JUNE 15, 2012 THROUGH JUNE 16, 2012 in the County of Montgomery, aforesaid, and State of Ohio, did cause the death of another, to-wit JASON MILLER, as a proximate result of the offender's committing or attempting to commit an offense of violence, to-wit: KIDNAPPING, in violation of 2905.01, a felony of the First Degree, and that said offense is not a violation of either Section 2903.03 or 2903.04 of the Revised Code; contrary to the form of the statute (in violation of Section 2903.02(8) of the Ohio Revised Code) in such case made and provided, and against the peace and dignity of the State of Ohio.

(Indictment, State Court Record, ECF No. 5, PageID 74-75, firearm specifications omitted.)  Mr. Harwell's claim in Ground for Relief One is that his conviction on these two counts is

unconstitutional because the Indictment does not recite the elements of the underlying predicate offenses, felonious assault in Count One and kidnapping in Count Two.

Mr. Harwell raised this claim as his first assignment of error on direct appeal, arguing both that the indictment was defective and his attorney provided ineffective assistance of trial counsel when he did not move to dismiss the indictment on this basis. Judge Wellbaum's opinion for the Second District first recites the governing standard for ineffective assistance of trial counsel from *Strickland v. Washington*, 466 U.S. 668 (1984). It then applies that standard as follows:

> [*P30] Under his First Assignment of Error, Harwell argues his trial counsel was ineffective in failing to file a motion to dismiss Counts One and Two of the indictment, which are the two counts for felony murder. In support of his claim, Harwell contends a motion to dismiss should have been filed due to the indictment being fatally defective in that it did not include the essential elements of the predicate offenses to his felony murder charges; i.e., felonious assault and kidnapping.

> [*P31] The Supreme Court of Ohio has rejected the assertion that the indictment must identify the elements of the predicate offense of the charged crime, as "it is the predicate offense itself and not the elements of the predicate offense that is an essential element of the charged offense." *State v. Buehner*, 110 Ohio St. 3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, ¶ 10 and 12. Rather, "when the indictment sufficiently tracks the wording of the statute of the charged offense, the omission of an underlying offense in the indictment can be remedied by identifying the underlying offense in the bill of particulars." *Id.* at ¶ 10, *citing State v. Skatzes*, 104 Ohio St. 3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 30. The Supreme Court has also held that "'[r]eading the felony-murder counts in pari materia with the related felony counts provide[s] ample notification of the elements of the underlying felonies * * * that the state had to prove.'" *State v. Wesson*, 137 Ohio St. 3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 26, quoting *State v. Foust*, 105 Ohio St. 3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 29.

> [*P32] The indictment in this case tracked the language of the criminal statute for felony murder, R.C. 2903.02(B). For each charge of felony murder, the indictment cited the predicate offense

and its correlating criminal statute; namely, R.C. 2903.11 for felonious assault and R.C. 2905.01 for kidnapping. The State also provided Harwell with a bill of particulars that stated the elements of each predicate offense. *See* State's Response to Defendant's Motion for Bill of Particulars (June 14, 2013), Montgomery County Court of Common Pleas Case No. 2012-CR-2367, Docket No. 311. Specifically, the bill of particulars noted that the elements of the predicate offenses were set forth in related felony Counts Six, Eight, Ten, Eleven, and Twelve of the indictment, which are separate counts for felonious assault and kidnapping. Therefore, we find the indictment and bill of particulars in this case provided sufficient notice of the predicate offenses charged in Counts One and Two. Accordingly, Harwell's trial counsel did not provide ineffective assistance in failing to file a motion to dismiss those counts.

*State v. Harwell, supra.*

Later in its opinion the Second District discusses the substantive claim that the indictment was defective:

[*P55] Under his Third Assignment of Error, Harwell contends the indictment was defective because it failed to allege all essential elements of the predicate offenses; i.e., felonious assault and kidnapping, and a mens rea for his felony murder charges. As a result of these alleged defects, Harwell also claims it was error for the trial court to instruct the jury on the elements of the predicate offenses.

[*P56] The foregoing claims have no merit because Harwell's indictment is not defective. As previously discussed under Harwell's First Assignment of Error, an indictment need not identify the elements of a predicate offense to a charged crime. *Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162 at ¶ 10 and 12. Also, the indictment in this case does not specify a mens rea for felony murder "because R.C. 2903.02(B), the felony-murder statute, does not contain a mens rea component." (Citation omitted.) *State v. Fry*, 125 Ohio St. 3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 43. "[A] person commits felony murder pursuant to R.C. 2903.02(B) by proximately causing another's death while possessing the mens rea element set forth in the underlying felony offense. In other words, the predicate offense contains the mens rea element for felony murder." (Citation omitted.) *Id*. "Thus, the mens

8

rea element need not appear in the count for felony murder  as long as the mens rea component is specified in the count charging the predicate offense." (Footnote omitted.) *Id*.

[*P57] Here, the mens rea for the predicate offenses of felonious assault and kidnapping were specified in separate counts of the indictment as well as in a bill of particulars. As noted earlier, "'[r]eading the felony-murder counts in pari materia with the related felony counts provide[s] ample notification of the elements of the underlying felonies * * * that the state had to prove.'" *Wesson*, 137 Ohio St. 3d 309, 2013-Ohio-4575, 999 N.E.2d 557 at ¶ 26, quoting *Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836 at ¶ 29. Therefore, the indictment is not defective and there is no basis for his claim that the trial court committed plain error by instructing the jury on the elements of the predicate offenses.

*State v. Harwell, supra*.

Thus the Second District decided the indictment was sufficient under Ohio law even though it did not contain the elements of the underlying predicate offenses, relying on State v. Buehner, supra, which is directly in point.

That ruling of what Ohio law requires in an indictment is binding on this Court. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."); *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003) (noting that federal courts are obliged to follow state court interpretations of state law and rules of practice.)  Although an attorney could hypothetically provide constitutionally ineffective assistance by failing to raise a determinative question of state law, the Second District held trial counsel here was not ineffective under the Sixth Amendment because the notion that the indictment had to include the elements of the underlying predicate crimes was not correct as a matter of Ohio law.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision

is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). The Second District's decision that it was not ineffective assistance of trial counsel to fail to make the incorrect claim Mr. Harwell urges is neither contrary to nor an unreasonable application of *Strickland*.

Indeed, Mr. Harwell does not address the Second District's application of *Strickland* to his first assignment of error. Instead, he argues the Second District was wrong in deciding the substantive claim in his third assignment of error that the underlying elements did not have to be included (Reply, ECF No. 8, PageID 2321-28). In doing so, he relies on federal case law requiring that federal indictments must include the underlying elements *Id.* citing, *inter alia, Hamling v. United States*, 418 U.S. 87 (1974)). His argument conflates federal common law indictment requirements with federal constitutional fair notice requirements.

The grand jury indictment requirement of the Fifth Amendment is not binding on the States. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes*, 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir. 2006)(*Apprendi* does not change this result).

While the grand jury guarantee of the Fifth Amendment is not binding on the States, the Due Process Clause of the Fourteenth Amendment requires the States to give a defendant fair notice of the charges against him, both so that he can defend and so that he can plead double jeopardy if faced with the same charge a second time. *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005), citing *Russell v. United States*, 369 U.S. 749 (1962), *Hamling v. United States*, 418 U.S. 87 (1974), and *United States v. Cruikshank*, 92 U.S. 542 (1875).

Mr. Harwell has argued the substantive part of this Ground for Relief in terms of the federal common law requirements for framing indictments instead of the federal constitutional law of fair notice. He has not indicated any way in which the indictment actually returned against him failed to provide him with fair notice of what he was charged with or how it failed to provide him Double Jeopardy protection. In particular, he has cited no Supreme Court precedent which requires, as a matter of due process, that a state court indictment must contain the elements of underlying offenses in order to provide fair notice.

None of the Supreme Court cases he cites requires including the elements of underlying offenses in a state court indictment. *Russell, supra,* involved the adequacy of a federal indictment under the Federal Rules of Criminal Procedure. *United States v. Debrow,* 346 U.S. 374 (1953), is again a federal prosecution. There the Supreme Court held a perjury indictment did not need to include the name of the person administering the oath as to which the perjury was allegedly committed; it says nothing about state court charging papers. *Hamling, supra,* is again a federal prosecution; its holding that a statutory citation in the body of a count of the indictment is insufficient is based on the grand jury clause, which is not applicable here. Finally, *Pettibone v. United States*, 148 U.S. 197 (1893), again concerns the sufficiency of a federal indictment.

Mr. Harwell cites many cases from other federal circuits and from various States, but he can prevail only upon a showing that the Second District's decision is contrary to or an unreasonable application of clearly established constitutional law as stated in holdings of the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362 (2000); *Lockyer v. Andrade*, 538 U.S. 63 (2003).

Mr. Harwell cites no Supreme Court precedent holding that failure to include the elements of predicate offenses in a state court indictment deprives a defendant of fair notice of

the charges when, as here, a bill of particulars specifies that the predicate offenses are the ones charged later in the same indictment.  The First Ground for Relief is therefore without merit.

In addition to its lack of merit, the First Ground for Relief, insofar as it makes a substantive claim about the Indictment (as distinct from the ineffective assistance of trial counsel claim) is procedurally defaulted on the basis of the same analysis made below as to Ground Two.

**Ground Two:  Improper Jury Instructions**

In his Second Ground for Relief, Mr. Harwell claims that his rights to due process and grand jury indictment were violated when the trial court instructed the jury on elements which did not appear in the indictment.

As noted above, there is no federal constitutional right to grand jury indictment applicable to the States.

The Respondent asserts, as he did with respect to Ground One, that merits review of this claim is barred by Harwell's procedural default in failing to register a contemporaneous objection to the instructions (Return, ECF No. 6, PageID 2277-81).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406

(6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional

rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*,

433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a

federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to

federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation

omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*,

433 U.S. at 87.  *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S.

391 (1963).  *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a

habeas claim is precluded by procedural default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir.

2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d

345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord

Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir.

2001).

> First the court must determine that there is a state procedural rule
> that is applicable to the petitioner's claim and that the petitioner
> failed to comply with the rule.
>                          . . . .
>
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of
> Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60
> L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture
> is an "adequate and independent" state ground on which the state
> can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not
> complied with and that the rule was an adequate and independent
> state ground, then the petitioner must demonstrate under *Sykes* that

> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley*, 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Applying the procedural default jurisprudence to this case, the Court finds Ohio, like most States and the federal courts, does have a rule which requires contemporaneous objection to trial court error.  *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998).

The Second District applied the contemporaneous objection rule by reviewing Harwell's relevant jury instruction claims only for plain error.  *State v. Harwell*, *supra*, ¶ 54.  An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir.  2012); *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord*, *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003).

Mr. Harwell seeks to overcome this procedural default by way of the actual innocence gateway recognized in *Schlup v. Delo*, 513 U.S. 298, 324 (1995)(Reply, ECF No. 8, PageID 2317-21).  To satisfy the new evidence requirement of *Schlup*, Harwell presents his own Affidavit (ECF No. 8, PageID 2341-43).

In *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held:

> [I]f a habeas petitioner "presents evidence of innocence so strong
> that a court cannot have confidence in the outcome of the trial
> unless the court is also satisfied that the trial was free of

14

> nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter*, 395 F.3d at 590.

Harwell's Affidavit does not meet the quality criteria imposed by *Schlup*.  No new physical evidence is adverted to.  Harwell provides double hearsay testimony about the results of a polygraph examination of a key state witness, Lori Peak.  The scientific reliability of the polygraph, even when results are testified to by a certified examiner, remain very much in contention.   The Sixth Circuit generally disfavors admitting the results of polygraph examinations.  *King v. Trippet*, 192 F.3d 517, 523-24 & n.  3 (6th Cir.  1999); *United States v. Blakeney*, 942 F.2d 1001 (6th Cir. 1991).  In *United States v. Scarborough*, 43 F.3d 1021 (6th Cir. 1994), a post-*Daubert* case, the court expressed its "long held opinion that the results of a polygraph are inherently unreliable," without considering the impact of *Daubert*.  The Supreme Court has acknowledged there remains no scientific consensus on reliability and has held there is no constitutional right to have results admitted at trials.  *United States v. Scheffer*, 523 U.S. 303 (1998).

Harwell's Affidavit also contains double hearsay testimony about what individual jurors

said about the jury deliberations.  But even live testimony from the jurors would not be admissible to impeach the verdict. Fed.  R. Evid.  606(b).

Finally, of course, Mr. Harwell includes his own statements about what happened. *Schlup* includes "trustworthy eyewitness accounts" as acceptable evidence for satisfying the gateway requirement.  But why should a habeas corpus court accept as credible the uncross-examined statements of the person who has the most interest in the outcome when that person did not have sufficient confidence in his own credibility to present his testimony to the trial jury? There are many reasons for a defendant's not taking the stand at trial, usually related to ways in which his credibility may be damaged on cross-examination.  Because Mr. Harwell's account of events has not been subjected to cross-examination when it could have been, the Court cannot accept at face value his hearsay statements about what happened.

In sum, Mr. Harwell has not satisfied the requirements for the *Schlup* actual innocence gateway and merits review of his Second Ground for Relief is barred by his failure to lodge a contemporaneous objection in the trial court.

**Ground Three:  Improper Jury Verdict Forms**

Merits review of Ground Three is barred by the same procedural default discussed with respect to Ground Two.

**Ground Four:  Insufficient Evidence**

In his Fourth Ground for Relief, Mr. Harwell asserts his convictions on Counts 1 through

4 are supported by insufficient evidence.  As noted above, the Second District vacated the convictions on Counts 3 and 4 and they are no longer material.  In particular he asserts that all that was proven was that he was present when the crimes were committed and mere presence is insufficient.  In considering this claim and the related but legally distinct state law claim that the verdicts were against the manifest weight of the evidence, the Second District wrote:

### Sufficiency and Manifest Weight of the Evidence

[*P73] Under his Sixth Assignment of Error and the Third Assignment of Error raised in his supplemental merit brief, Harwell challenges the legal sufficiency and manifest weight of the evidence for his convictions on Counts One through Thirteen.

[*P74] "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 1997 Ohio 372, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

[*P75] In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the

manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61, 2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

**[*P76]** "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 1997 WL 476684, *4 (Aug. 22, 1997). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 Ohio App. LEXIS 4873, 1997 WL 691510, *4 (Oct. 24, 1997).

**[*P77]** "'Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency.'" *State v. Perry*, 2d Dist. Montgomery No. 26421, 2015-Ohio-2181, ¶ 24, quoting *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. "As a result, 'a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.'" *Id.*, quoting *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

**[*P78]** As noted earlier, Harwell was convicted of two counts of felony murder in violation of R.C. 2903.02(B), which provides, in relevant part that: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree[.]" Therefore, the "commission of another felony offense is a necessary predicate to an R.C. 2903.02(B) offense, and the predicate felony must be a proximate cause of the death R.C. 2903.02(B) prohibits." (Citation omitted.) *State v. Cook*, 2d Dist. Montgomery No. 23721, 2010-Ohio-6222, ¶ 49, 970 N.E.2d 1020.

**[*P79]** "''Generally, for a criminal defendant's conduct to be the proximate cause of a certain result, it must first be determined that the conduct was the cause in fact of the result, meaning that the result would not have occurred 'but for' the conduct. Second, when

the result varied from the harm intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable.'"'" *State v. Wieckowski*, 2d Dist. Clark No. 2010-CA-111, 2011-Ohio-5567, ¶ 11, quoting *State v. Dixon*, 2002-Ohio-541, 2002 WL 191582, * 6 (2002), quoting LaFave & Scott, *Criminal Law*, Section 35 at 246 (1972).

**[\*P80]** In this case, the predicate offenses at issue are felonious assault in violation of R.C. 2903.11 and kidnapping in violation of R.C. 2905.01. Both of these offenses fall under the definition of "offense of violence" under R.C. 2901.01(A)(9) and both are felonies of the first or second degree. Harwell was also charged with six separate counts of kidnapping and three separate counts of felonious assault.

**[\*P81]** The relevant definition of felonious assault under R.C. 2903.11(A) is as follows: "No person shall knowingly do either of the following: (1) Cause serious physical harm to another * * *; (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(1), (A)(2).

**[\*P82]** In addition, the relevant definition of kidnapping under R.C. 2905.01(A) is as follows: "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (2) To facilitate the commission of any felony or flight thereafter; (3) To terrorize, or to inflict serious physical harm on the victim or another[.]" R.C. 2905.01(A)(2), (A)(3). Under R.C. 2905.01(B), kidnapping is defined as: "No person, by force, threat, or deception, * * * shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * *: (2) Restrain another of the other person's liberty." R.C. 2905.01(B)(2).

**[\*P83]** With the foregoing standards in mind, we conclude that Harwell's convictions are supported by legally sufficient evidence and are not against the weight of the evidence. Initially, we note that three witness identified Harwell as "B." Peak and Lambes also both testified that they recognized B's cell phone number as 660-****. The various cell phone records admitted by the State demonstrated that the 660-**** cell phone corresponded several times with Peak, Lambes, and Miller on the night of June 15, 2015. In addition, the 660-**** cell phone also had several contacts in

common with Harwell's other cell phones. Accordingly, it was reasonable for the jury to conclude that Harwell is B.

[*P84] With respect to Harwell's three felonious assault convictions, the jury was presented with testimony and evidence indicating that at least five gunshots were fired at Lambes and Miller. Specifically, five shell casings were found by law enforcement at the scene of the crime and Lambes testified to hearing multiple gunshots as he ran away from Harwell and his accomplice. The testimony from the State's expert indicated that the shell casings were found to be from two separate firearms and Lambes testified that he saw both Harwell and his accomplice with firearms on the night in question. From this evidence, a jury could reasonably conclude that Harwell knowingly fired at least a portion of the gunshots in an attempt to cause physical harm to Lambes and Miller. Additionally, given that Miller died as a result of multiple gunshot wounds, a jury could also reasonably conclude that Harwell knowingly caused serious physical harm to Miller either as the principal offender or as an aider and abettor. Accordingly, we conclude the weight of the evidence supports Harwell's three convictions for felonious assault.

[*P85] The weight of the evidence also supports Harwell's three kidnapping convictions involving Lambes. Lambes' testimony, if believed, clearly establishes that Harwell restrained his liberty through threat of harm. Lambes testified that he felt he had no choice but to leave Peak's house with Harwell. He also testified that he felt threatened when Harwell flashed his gun in the truck and took his cell phone. In addition, Lambes testified that Harwell made threats, which led him to believe that he would have been shot or killed if he tried to escape. Lambes further testified that Harwell specifically told him not to run away. There was also testimony from Mesarosh that Miller had told her that Harwell was holding Lambes hostage. Lambes also testified that when he eventually ran away, four or five shots were fired at him. The foregoing testimony, if believed, sufficiently establishes that Harwell's restraint of liberty over Lambes placed Lambes in fear, facilitated a felonious assault, and also created a substantial risk of serious physical harm to Lambes. Accordingly, the weight of the evidence supports all three kidnapping convictions related to Lambes under R.C. 2905.01(A)(2),(3), and (B)(2).

[*P86] With respect to the three kidnapping convictions related to Miller, Mesarosh's testimony, if believed, establishes that Miller was afraid to meet Harwell at John Street for fear of being killed. Mesarosh's testimony further establishes that Miller said he had to

go to straighten things out with Harwell so he would let Lambes go. In other words, the testimony indicates that Harwell restrained Miller's liberty through threat of harm to Lambes. Lambes also testified that Harwell approached Miller by patting him down, removing something from his waistband, and ordering him in the backseat of his truck. In addition, Lambes testified that Harwell threatened to kill Miller if Miller did not kill Lambes. Again this testimony, if believed, sufficiently establishes that Harwell's restraint of liberty over Miller placed Miller in fear, facilitated a felonious assault and murder, and also created a substantial risk of serious physical harm to Miller.

[*P87] Having determined that the separate convictions for kidnapping and felonious assault are not against the manifest weight of the evidence, the predicate offense element for felony murder has been satisfied. There is also sufficient evidence in the record indicating that Miller died as a proximate result of the felonious assault and kidnapping committed by Harwell. Therefore, Harwell's felony murder convictions are also not against the manifest weight of the evidence.

[*P88] Because Harwell's felony murder, felonious assault, and kidnapping convictions are not against the manifest weight of the evidence, they are necessarily supported by sufficient evidence as well. We have not discussed the two convictions for attempted felony murder as those convictions will be vacated under the authority of *Nolan*, 141 Ohio St.3d 454, 2014-Ohio-4800, 25 N.E.3d 1016.

[*P89] For the foregoing reasons, Harwell's two assignments of error related to the manifest weight and sufficiency of the evidence are overruled.

*State v. Harwell, supra*.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict *under Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(per curiam).

The evidence summarized by the Second District in ¶ 84 is sufficient evidence because it shows testimony that at least two weapons were involved in the shootings, that Harwell had a firearm, and that Harwell's accomplice had a firearm, thus supporting the convictions for felonious assault.  The evidence summarized in ¶ 85 is sufficient to show that Harwell kidnapped Lambes.  Harwell's Fourth Ground for Relief is without merit.

**Ground Five: Ineffective Assistance of Trial Counsel: Failure to Object to Impermissible Amendment of Indictment**

In his Fifth Ground for Relief, Mr. Harwell combines the substantive claim that the trial court impermissibly amended the indictment to read it as charging first-degree rather than second degree felony kidnapping and that his attorney provided ineffective assistance of trial counsel by not objecting.

The Second District decided this claim as follows:

> **[*P49]** . . . Harwell contends his trial counsel was ineffective in failing to object to the trial court allegedly "amending" the kidnapping charges during the jury instructions to make them first-degree felonies when he claims the indictment only charged him with second-degree felony kidnapping. According to Harwell, the indictment charged him with second-degree felony kidnapping as opposed to first-degree felony kidnapping because it failed to state that he "did not release the victim in a safe place unharmed." As a result, Harwell claims the trial court erred in instructing the jury on first degree felony kidnapping and that his trial counsel should have raised an objection.

> **[*P50]** "Under R.C. 2905.01(C), the offense of kidnapping is generally a first-degree felony but may be reduced to a second-degree felony if 'the offender releases the victim in a safe place unharmed.'" *State v. McKnight*, 107 Ohio St. 3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 233. *Accord State v. Carver*, 2d Dist. Montgomery No. 21328, 2008-Ohio-4631, ¶ 87. However, "[w]hether the victim is released in a safe place unharmed is not an element of the offense." *Carver* at ¶ 87, citing *State v. Sanders*, 92 Ohio St.3d 245, 265, 2001 Ohio 189, 750 N.E.2d 90 (2001). "Rather, it is in the nature of an affirmative defense, and the defendant bears the burden of proof on this issue." (Citations omitted.) *Id.*

> **[*P51]** Because the "safe place unharmed" language is not an element of kidnapping, it need not be included in the indictment. *State v. Drake*, 10th Dist. Franklin No. 98AP-448, 1998 Ohio App. LEXIS 6224, 1998 WL 890169, *6 (Dec. 17, 1998). We also note that Harwell did not present any evidence at trial indicating that the victims were released in a safe place unharmed. Rather, the evidence indicates that Miller was shot multiple times and left to

24

die, whereas Lambes escaped by fleeing into the woods while gunshots were fired at him. "When the victim of a kidnapping escapes of [his or] her own accord, a defendant cannot establish the affirmative defense that the victim was released unharmed." (Citation omitted.) *State v. White*, 10th Dist. Franklin No. 06AP-607, 2007-Ohio-3217, ¶ 21.

[*P52] For the foregoing reasons, the trial court did not err when it instructed the jury on first-degree felony kidnapping. Therefore, an objection on that basis was unwarranted and trial counsel's failure to raise such an objection does not amount to deficient performance. Accordingly, Harwell's ineffective assistance claim must fail.

*State v. Harwell, supra.*

Thus the Second District definitively held that, under Ohio law, kidnapping is a first degree felony unless it is proved that the victim was released in a safe place unharmed. In other words, to make kidnapping a felony of the first degree, the grand jury does not have to add language charging that the victim was not released in a safe place unharmed. This Court is bound by the Second District's determination of what Ohio law requires. Since Ohio law does not require negativing the "safe place unharmed" degree-lowering fact, the trial court did not err in instructing on kidnapping as a first-degree felony as it was charged and there was no ineffective assistance of trial counsel in failing to object. Ground Five is without merit.

**Ground Six: Ineffective Assistance of Trial Counsel: Not Objecting to Presence of Alternate Jurors During Deliberations**

In his Sixth Ground for Relief, Mr. Harwell asserts his attorney provided ineffective assistance of trial counsel when he did not object to the presence of the alternate juror with the deliberating jury. Harwell raised this claim in his first assignment of error in his supplemental brief and the Second District decided it as follows:

[*P42] Under the First Assignment of Error raised in Harwell's supplemental merit brief, Harwell contends his counsel was ineffective in failing to object to the alternate jurors being present during the jury deliberations. However, after reviewing the record, we find no evidence demonstrating that the alternate jurors were present during deliberation, as the trial court stated the following:

> Alternate jurors were selected to serve in the event of any misfortune to a member of our 12 regular jury panel. What we're going to do in this case is we're going to keep our alternates serving with us, *but they will not be deliberating with the 12 jurors*. * * * But what I'm going to do is those orders that have been applicable to all of our jurors during our recesses about not discussing the case, not conducting any independent investigation, and so on, those orders are going to continue to apply to you even though *I'm not going to allow you to go back to the jury room to deliberate*.

Trial Trans. Vol. VII (June 28, 2013), p. 1717-1718.

[*P43] Shortly after the trial court made the foregoing remarks, the court was informed of an issue with Juror Number Six, who was thereafter excused and replaced by the first alternate juror. *Id.* at 1726-1729. The record does not indicate that the second alternate juror was ever present during the jury deliberations. Accordingly, Harwell's ineffective assistance claim lacks merit.

*State v. Harwell*, *supra*. Thus the Second District found there was no record evidence that an alternate was ever present when the jury was deliberating except after alternate number one had replaced regular juror number six. That finding of fact is dispositive of the Sixth Ground for Relief in that Mr. Harwell has presented no clear and convincing evidence that contradicts that finding. See 28 U.S.C. § 2254(d)(2).

**Ground Seven: Ineffective Assistance of Trial Counsel:   Failure to Object to Jury Instructions on Complicity and Causation**

In his Seventh Ground for Relief, Petitioner claims he was provided ineffective assistance

of trial counsel when his attorney did not object to erroneous jury instructions on complicity and

causation. Regarding the complicity instruction, the Second District held:

> [*P45] Under the Second Assignment of Error raised in Harwell's supplemental merit brief, Harwell contends his trial counsel was ineffective in failing to object to the trial court's jury instruction on complicity, as he claims the trial court provided an incorrect instruction that prejudiced him. Specifically, Harwell argues that the trial court failed to inform the jury that to find him guilty as an aider and abettor it must find that he acted "with the kind of culpability required for the commission of the offense" as provided by R.C. 2923.03.

> [*P46] A review of the record reveals that Harwell's trial counsel entered a general objection to the jury instructions with regards "to anything dealing with complicity and aiding and abetting." Trial Trans. Vol. VII (June 28, 2013), p. 1628. While counsel did not state that he was objecting to the complicity instructions for the specific reason given by Harwell in his appellate brief, we do not find that it would have changed the outcome of the case even if counsel had made the specific objection.

> [*P47] The trial court's jury instructions on aiding and abetting were correct statements of law that included the culpability required for the commission of each offense. Specifically, under each charged offense, the trial court's jury instructions provided the culpability or mens rea required for finding Harwell guilty as an aider and abettor. For example, under Count One, felony murder with the predicate offense of felonious assault, the trial court stated that "an aider and abettor is a person who *knowingly* aids, helps supports, assists, encourages, cooperates with, advises, incites, or directs himself with another person or persons to commit the offense." (Emphasis added.) *Id.* at 1673. Likewise, for Count Two, felony murder with the predicate offense of kidnapping, the trial court stated that "an aider an abettor is a person who *purposefully* aids, helps, supports, assists, encourages, cooperates with, advises, incites, or directs himself with another person or persons to commit the offense." (Emphasis added.) *Id.* at 1680. The trial court provided a similar mens rea specific instruction for every charge. Therefore, because the trial court did not err when instructing the jury on the culpability required to be an aider and abettor, Harwell cannot establish that the outcome of his trial would have been different had counsel objected on those specific grounds. Accordingly, Harwell's ineffective assistance of counsel claim fails.

*State v. Harwell, supra.*

Regarding causation, the Second District wrote:

[**\*P62**] Under his Fifth Assignment of Error, Harwell contends the trial court's jury instruction defining the term "cause" was improper. Jury instructions given by a trial court must be "a correct, clear, and complete statement of the law." (Citation omitted.) *State v. Justice*, 2d Dist. Montgomery No. 21375, 2006-Ohio-5965, ¶ 42; *State v. Moore*, 2d Dist. Montgomery No. 24957, 2012-Ohio-3604, ¶ 45. *Ohio Jury Instructions*, CR Section 417.23 defines "cause" and "natural consequences" in the following manner:

1. CAUSE. The state charges that the act or failure to act of the defendant caused (death) (physical harm to [person] [property]). Cause is an essential element of the offense. Cause is an act or failure to act which in a natural and continuous sequence directly produces the (death) (physical harm to [person] [property]), and without which it would not have occurred.

2. NATURAL CONSEQUENCES. The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act. The defendant is also responsible for the natural and foreseeable (consequences) (results) that follow, in the ordinary course of events, from the act or failure to act.

*Id.*

[**\*P63**] In this case, the trial court instructed the jury consistent with the foregoing section of the Ohio Jury Instructions when it provided the following definition of "cause":

Cause is an essential element of the offense. Cause is an act which in a natural and continuous sequence directly produces the death of a person and without which it would not have occurred. The Defendant responsibility is not limited to the immediate or most obvious result of the Defendant's act. The Defendant is also responsible for the natural and foreseeable results that follow in the ordinary course of events from the act.

* * *

28

Cause. The State charges that the act of the Defendant caused physical harm to another. Cause is an essential element of the offense. Cause is an act which in a natural and continuous sequence directly produces the physical harm to another and without which it would not have occurred.

Trial Trans. Vol. VII (July 25, 2013), p. 1670, 1672.

[*P64] Therefore, because the trial court's instruction as to "cause" provided a correct statement of law and is taken almost verbatim from the Ohio Jury Instructions, the trial court did not err, let alone commit plain error, when it instructed the jury as such.

*State v. Harwell, supra.*

Because the trial court's instructions on complicity and causation were correct statements of Ohio law as found by the Second District, any failure on trial counsel's part to object cannot have been deficient performance. Harwell's Seventh Ground for Relief is without merit.


**Ground Eight: Denial of Right to Counsel on Appeal**


In his Eighth Ground for Relief, Mr. Harwell claims he was denied his right to counsel on appeal because his waiver of appellate counsel was not knowing, intelligent, and voluntary.

The record reflects that Harwell retained attorney Robert Brenner to represent him on appeal who filed a Notice of Appearance and Substitution of Counsel on January 10, 2014 (State Court Record, ECF No. 5, PageID 152-53). The same day Brenner filed a motion to strike the *Anders* brief that had been filed in the case by prior counsel. *Id.* at PageID 154. On February 25, 2014, the Second District granted the motion and allowed an additional thirty days for briefing. *Id.* at PageID 155-56. On July 29, 2014, however, Harwell moved the appellate court to

discharge Brenner and substitute his own pro se merit brief. *Id.* at PageID 157-58. On September 5, 2014, the Second District granted the motion, but required Harwell to waive his right to a copy of the transcript at State expense. *Id.* at PageID 234-35. Harwell signed that waiver on September 10, 2014, and it was filed September 16th. *Id.* at PageID 237.

Respondent argues this claim is procedurally defaulted because it was not raised in the court of appeals. Indeed it appears that the first time this claim was raised was as Proposition of Law 8 in Mr. Harwell's appeal to the Ohio Supreme Court (See Return of Writ, ECF No. 6, PageID 2262; Memorandum in Support of Jurisdiction, State Court Record, ECF No. 5, PageID 360). Moreover, as that claim was made in the Supreme Court, it is completely conclusory – he merely asserts his waiver was not knowing, intelligent, and voluntary without saying what was lacking in his understanding or how the waiver was involuntary. *Id.* at PageID 376. Further, the Second District's granting of Harwell's waiver of appellate counsel is a finding of fact. Such determination is entitled to deference in the federal courts.

Harwell does not deny his failure to raise this claim in the Second District, but says his default is excused by his actual innocence (Reply, ECF No. 8, PageID 2335). For reasons already given, Harwell's proof of actual innocence is unavailing. Ground Eight should be dismissed as procedurally defaulted.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify

to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

October 27, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).